## AYCRIGG'S EXECUTORS v. THE NEW YORK AND ERIE RAILROAD COMPANY.

1. A master is liable to answer in a civil suit for the tortious acts of his servant, if the act be done in the course of his employment in his master's service, or within the scope of his authority; whether so done or not, must depend upon the facts of each particular case.
2. What acts of the captain of a ferry boat may be considered as not being in the course of his employment.
3. The rule which should govern the court on a motion to nonsuit, discussed.

---

* *Ludlam* v. *Broderick.*     † *Spencer* 180.

On rule to show cause why a nonsuit should not be set aside.

For the plaintiff, *A. S. Pennington.*

For the defendant, *I. W. Scudder.*

HAINES, J. This action was brought to recover the damages alleged to have been sustained from the burning of the yacht Astrea, of the plaintiffs, by the negligence and misconduct of the defendants, on the first day of August, 1862.

The motion now is to set aside a nonsuit granted at the Hudson Circuit. This leads to the consideration of the rule which should govern a court on a motion to nonsuit. In the case of *The Central Railroad Company* against *Moore*, 4 *Zab.* 830, the Court of Errors and Appeals decided the rule in terms quite explicit, and that rule must govern this case. It was there said, that the province of the court and that of the jury are quite different and distinct: of the one to declare the law, and the other to settle the facts. If the facts, clearly settled or uncontroverted, present a case in which the plaintiff is not entitled to recover, it is the duty of the court to nonsuit; or if the case made be such that the court would set aside a verdict against the defendant, as contrary to evidence, the plaintiff should be called. In so doing, the court acts strictly within its province, and declares the law arising from the clearly settled and uncontroverted facts. But if the facts be controverted, or not manifest, it is the duty of the judge to submit them to the jury, under proper instructions, thus leaving to that branch of the court the exercise of its peculiar functions, and affording to the parties the right of trial by jury, which the constitution has declared shall remain inviolate.

Then the question arises, whether the facts in this case were clearly settled and uncontroverted. Does the testimony show beyond question that, at the time of the injury complained of, the person in command of the steamer of the defendants was not acting within the scope of his au-

thority? not in the course of the business of his employment? Whether he was or not is the question to be determined.

By the testimony, it appears that the Astrea was anchored on the flats near Jersey City. The barge Poughkeepsie, lying at the wharf of the defendants, on the Jersey side of the river, took fire. She went out of the dock, but how or by what means does not appear. Being out, she was carried by the wind and tide beyond the Astrea. Then the steamer Hudson, a ferry boat employed by the defendants to carry passengers and freight between their wharves on each side of the river, went down the river out of her usual course, and fastened to the barge, and towed her up the stream to within about a hundred feet of the Astrea. At the same time with the cry of some persons on the wharf and elsewhere, the hawser connecting the steamer to the barge was cut or parted, and the barge being again loose floated against the yacht, set fire to and greatly damaged her. The judge holding that there was not sufficient evidence to charge the defendants with the negligence of their agents, granted the motion to nonsuit. The simple question now to be answered is, was that ruling correct?

There is, perhaps, no rule of law more firmly settled than that a master is ordinarily liable to answer, in a civil suit, for tortious act of his servant, if the act be done in the course of his employment in his master's service. This is on the principle of the maxim *respondeat superior*, and also of the maxim " *qui facit per alium facit per se.*" The master is liable, although he did not authorize or even know of the servant's act or negligence, and although he disapproved of or forbade it, if the act was done in the course of the servant's employment, or, as it is sometimes expressed, within the scope of his authority.

The term " within the regular department of the servant," as used by Littledale, J., in *Rimell* v. *Sampayo*, 1 *Car. & P.* 255, is applicable rather to matters of contract than of torts, as where a servant, acting in his particular department of

business, contracted a debt for which the master was held liable. In that case a coachman who had agreed, for a proper consideration, to find horses, hired a pair of horses for his employer's use; and it was held that the owner of the horses having no notice of the private contract between the coachman and the master, could hold the master liable for the hire of the horses. The servant appearing in the master's livery, and hiring the horses for his master's use, " was acting within his regular department of business." .

Whether the servant was acting within the scope of his employment and in pursuance of his master's orders— whether in the course of his employments, or on his own responsibility, in the pursuit of his own business or pleasure, must depend upon the facts of each case. It is difficult to fix any general rule to govern every particular case. The numerous authorities on the subject are quite uniform on the principle of law involved, yet vary in its application according to the various circumstances under which the supposed injury arose.

It was held, for example, in *Middleton* v. *Fowler*, 1 *Salk.* 282, and in many subsequent cases, that a master is not responsible for the wrongful act of his servant, unless done in the execution of the authority from his master. And in another case it is said, that beyond the scope of his employment, he is as much a stranger to his master as to a third person. *Russell* v. *Early*, 13 *Alabama R.* 131. In *Joel* v. *Morrison*, 6 *Car. & Pay.* 501, it was ruled that a master was liable for damages caused by the negligent driving of his cart in the city by his servant, although it was proved that, in carrying out his orders, the cart ought not to have been in the city at all; and Parke, B., said: " If the servant, being on his master's business, make a detour to call upon a friend, the master will be liable." Again, in *Sleath* v. *Wilson*, 9 *Car. & Pay.* 607, the master was held responsible for damages caused by the negligent driving of his servant, who, after setting his master down, drove round to deliver a parcel of his own, and did not drive directly where he was ordered to go; and Ers-

kine, J., declared, that whenever the master has intrusted his servant with the control of the carriage, it is no answer that the servant acted improperly in the management of it.

In this case it is manifest that the captain was in charge of the steamer, with the control of it when in motion and crossing the river, with the general direction to ply between the wharves of the defendants. But the time of starting on each trip, of putting the boat in motion, was under the direction of an agent of the defendants. And the steamer was to leave the dock only on his signal. He testifies that he gave no instruction for the Hudson to go after the barge, nor to have it cut off. It does not appear that the Hudson was on her trip across the river, and made a detour in pursuit of the barge, nor that any signal for starting had been given. If no such order was given, the steamer was not then under the control of the captain by authority of the company. It was no more so than a coach and horses are under the control of the driver while in the stable or standing at the door awaiting orders. For aught that appears, the captain may, of his own will, and for his own purpose of benevolence or profit, have moved out of the slip and gone in pursuit of the barge. If so, upon the principles above stated, he was not on the business of his employers, but was as much a stranger to the company as to any third person.

It may well be questioned whether, if the commander of the steamer was acting in the course of his employment and under the implied command of the company, the defendants are liable. The burning barge was moving under the forces of the wind and tide towards the wharves and shipping below, threatening destruction to a large amount of property. The steamer, to prevent so great a calamity, seized the barge and towed her up the stream. When it was no longer safe to continue the connection, the hawser was severed, and the barge left to float. On the principle of inevitable necessity, the owners of the steamer would perhaps be exculpated from responsibility, in the absence of proof either of carelessness or willfulness on the part of the commander. I can see no

evidence sufficient to justify a recovery. Had it been left to the jury, and a verdict found for the plaintiffs, we would have been obliged to set it aside as a verdict without sufficient evidence. I think the rule to show cause should be vacated.

Rule to show cause discharged.

OGDEN and VREDENBURGH, Justices, concurred.

CITED in *New Jersey Express Co.* v. *Nichols*, 4 *Vroom* 439.